Filed 10/7/13  In re A.I. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re A.I. and Anthony I., Persons Coming Under the Juvenile Court Law. | |
| M.P., <br><br>     Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF CONTRA COSTA COUNTY, <br><br>     Respondent; <br><br> CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU, <br><br>     Real Party in Interest. | A139227 <br><br> (Contra Costa County <br> Super. Ct. Nos. J1200662, J1200663) |

**I.  INTRODUCTION**

In this petition for an extraordinary writ, M.P., the mother of A.I. and Anthony I., challenges the juvenile court's order, made at the 12-month review hearing, terminating her parental rights and setting the matter for a hearing under Welfare and Institutions Code section 366.26.[1] Mother contends the juvenile court's order must be vacated

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise noted.

1

because she was entitled to, and did not receive, six months of reunification services.  We disagree and affirm the court's order.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

A.I. and Anthony I.[2] first came to the Bureau's notice in April 2012.  A petition was filed on April 23, 2012 alleging that Father had grabbed Mother and punched her in the back and side of the head, arm and hands.  He also grabbed a lanyard that was around Mother's neck and choked her with it.  The petition further alleged that the home in which A.I. and Anthony lived with Mother was "cluttered with trash throughout the home and food on the floors making it difficult to move about the residence and unsuited for safe and healthy habitation."

A detention hearing was held on April 24, 2012.  At that time, the children were detained and placed with a relative.  Pending further proceedings, the court ordered that Mother be provided with the following services:  alcohol and drug testing, parenting education, domestic violence education and counseling.  The court ordered that mother be given in-person, Bureau-supervised visitation for a minimum of one hour twice a month at a location approved of by the Bureau.  Mother was also given telephone contact visitation.

The court set a jurisdictional hearing for April 30, 2012.  This hearing was continued to May 14, 2012.  On May 14, 2012, the hearing was again continued, this time to June 18, 2012 in order to permit parents to attend a mediation session.  The hearing was continued a third time to June 25, 2012 because the parents did not appear at mediation.

In its detention and jurisdiction report filed on June 25, 2012,  the Bureau noted that "court dependency information" had been provided to Mother.  She "also received a list of referrals for parenting education, domestic violence assistance, and counseling."  She was also "advised that a drug testing referral would be submitted."

---

[2] A.I. was a year old when she and Anthony were detained.  Her brother Anthony was four years old when he and his sister were detained.

2

The Bureau's "case planning recommendation" reiterated the facts already set out in its earlier filed petitions, and "respectfully recommended that this referral be promoted to a Court case and petitions be filed on behalf of the minors." The Bureau did not put forward any plan for reunification services.

On June 25, 2012, the court sustained the petition and found the children to be described by section 300, subdivision (b). The contested jurisdictional hearing was continued to July 23, 2012. This hearing was again continued to August 6, 2012. On August 6, 2012, the Bureau filed a "memorandum" intended to "present corrected recommendations to the court and all parties." These recommendations included that the court "[o]rder that Children & Family Services make appropriate Child Welfare Services available to the child and parents in order to help the child return home, which shall include, but not be limited to, those services set forth in the Child Welfare Services Case Plan, which is incorporated into this order by this reference, and with which the parties are ordered to comply." This case plan is not, however, attached to the document filed on this date. Elsewhere in the record is an unfiled Disposition Report that does contain a case plan. The report was signed on July 23, 2012 by a judicial officer and there is a handwritten notation on the report stating "not followed." It is not clear whether the case plan referred to in the August 6, 2012, memorandum is the same as the case plan contained in the unfiled Disposition Report. However, on August 6, 2012, the court ordered that the Bureau was required to make available to Mother services included in the reunification plan dated "8/06/02."

A six-month review hearing was scheduled for January 14, 2013. A week before the hearing, the Bureau requested a continuance for two weeks and reported that it had had no contact with either parent for approximately five months. The Bureau also noted that the parents had not requested an visits with the children and had not contacted the children's caregivers to inquire about the children's well being. On January 31, 2013, the court set the matter for a contested hearing to be held on February 11, 2013. On February 11, 2013, the matter was continued to February 28, 2013 because the social worker was unavailable. The hearing was again continued at that time and the court ordered the

Bureau to provide it with a "due diligence report" regarding the Father's whereabouts by March 14, 2013.

In a Declaration of Due Diligence filed on March 14, 2013, the Bureau reported that it had sought information on Father's whereabouts, was unable to locate him, and had not been contacted by him. On March 14, 2013, the court accepted this declaration and set the contested hearing to March 19, 2013.

At that hearing, which took place on March 19 and March 21, it emerged that the Bureau had failed to provide Mother with reasonable services by, essentially, leaving Mother almost entirely to her own devices to access the visitation and counseling in which she was required to participate. The juvenile court stated that it was very concerned about the lack of guidance given Mother, found that reasonable services had not been provided and ordered that "reunification services continue for another six months." A review hearing was scheduled for June 17, 2013.

On April 22, 2103, the Bureau moved ex parte for the court's approval of surgery on Anthony's thumb. At the time the motion was filed, the Bureau had been in contact with Mother, who had agreed to get Anthony's medical records from Kaiser and fax them to the surgeon. Mother had not done so and the social worker was not able to get back in touch with her. On May 30, 2013, the Bureau filed a second ex parte application asking permission for the children's relative caregivers to leave them with their paternal grandparents for a visit. The court granted both requests.

On June 17, 2013, the court held a review hearing. At that time, the Bureau requested that the court terminate services and set a 366.26 hearing. Counsel for Mother requested a date for a contested hearing, which was set for July 10, 2013.

The Bureau filed a status review report on July 10, 2013. The Bureau stated that it had been in contact with Mother on April 4, 2013. Mother said she was going to participation in a residential drug treatment program. She was concerned about the planned surgery on her son's thumb and stated that she would obtain medical records to give to her son's surgeon. After that conversation, Mother could not be contacted.

4

The Bureau received a police report concerning an attempted car theft by Mother. In her backpack, Mother had "several shaved vehicle keys for various types of vehicles, several electronic door lock devices for various types of vehicles, screwdrivers, bolt cutters, awl, needle nose pliers, wire splicer, mallet and a flashlight."

On May 8, 2013, Mother came to the Bureau, informed them of her trial date (May 23, 2013), and received transportation tickets. At that time, her case worker discussed drug testing and attending NA classes with her. The case worker also provided her with a copy of her case plan and went over it with her. Mother was offered resources and declined them on the ground that she had received several referrals when she left jail. The case worker arranged visitation for Mother on May 23 and May 30. Mother attended both visits. She also attended a supervised visit on April 22, 2103 and missed a visit on June 13, 2013. At the time the report was filed, Mother had not yet entered a residential drug treatment program and had provided no verification that she had participated in NA meetings. Despite being told on several occasions that she was required to drug test, Mother did not do so. In fact, between April and the date of the report, Mother was assigned 13 drug testing dates. She completed none of them. Mother did not have her own housing, having moved in with her Mother. In addition, she did not participate in her child's health care needs and had been recently arrested. Mother had failed to participate in domestic violence prevention program as required under her case plan. Mother gave birth to a child on January 10, 2013. At the time, she and the child tested positive for methamphetamine.

At the review hearing on July 10, 2013, Counsel made an offer of proof that Mother would "indicate to the Court that she has been in custody on a warrant, failure to appear warrant for approximately 16 days. She has during that time signed up for a parenting inside-out class. She did that on July 9th of 2013. On June 28th of 2013, she engaged in a deuce program and has proof of that in regard to her attendance and she has attended regularly that program since being in custody. And she has also engaged in an anger management class and that is a voluntary class, it's not a requirement of her incarceration. And she appears to have attended that class approximately four times. [¶]

5

She has visited her children, as the court report indicates, and has not been able to visit since she went into custody which was on or about June 24th of 2013. She loves her children very much. And would like to continue to have an opportunity to engage in services to reunify with them. She is to be released on July 24 and that release will be to the Rectory, which is a drug treatment program."

The court found that it was clear that "neither parent has participated in any meaningful way with their case plans." The court declared itself "unwilling to make these children wait any longer for what they deserve, which is permanency in their life in a stable, loving household. [¶] And these parents—and Ms. [P.], you were given extra time. You came in here and you testified and you presented as if you were truly committed to this. And it's really tragic when substance abuse gets to the level that the love and desire to be with your children is overcome by the disease of addiction. And in this case that's exactly what has happened. I don't doubt for a minute Ms. [P.]'s love for the children. . . . [¶] However, all of that being said, these proceedings, although they're about the family, they're not about the parents. They're really about the children. And I have to do what's best in the interest of these children and their safety and well being. [¶] So because of all those reasons and the discussion here today and what's set forth in both of these reports I am going to follow the recommendation. I am hereby terminating services to both parents. I am setting a 000.26 hearing." Although this hearing was set for two months before the end of the six additional months of services given Mother, counsel did not object or otherwise call this matter to the court's attention.

A hearing pursuant to section 366.26 was then set for November 4, 2013.

### III. DISCUSSION

Mother makes only one argument—namely, that the court erred in setting the section 366.26 hearing on July 10, 2013, two months before the end of the additional six months of services the court had granted her. We disagree.

First, at the July 10, 2013 hearing, all parties—including Mother's counsel—were in accord with the court's decision to terminate Mother's services at the four-month mark and set the matter for a section 366.26 hearing. Mother's counsel made a statement prior

6

to the court's ruling that made it clear Mother did not object to the court's decision to shorten the reunification services she would receive. Counsel told the court: "Unfortunately, in spite of the opportunities that my client was given to engage in services and an additional six months of services at the six-month review date, she has not been able to avail herself of those services. The report is essentially accurate. My client is unfortunately very much, in my opinion, under the influence of an addiction, which she just has not been able to address. And I am hopeful that she will go to the Rectory when she is released from custody and that she will take that opportunity if not for her children but for herself to try to rehabilitate and address this addiction. [¶] Unfortunately, we are at the 12-month timeframe for these two children. And I know that mother loves her children very much and I think that she, when she is able to visit them, she does and has visited regularly for the months of May and June. Prior to that, the reports I think are accurate in regard to the visit record. But I am hopeful that she will be able to pull it together and I would be very willing to file on her behalf a motion to have this Court reconsider her services between now and the time the 000.26 hearing is set in the event the Court does not grant her any additional time today." Mother has, therefore, waived any claim of error.

However, even if Mother had objected, any such objection would have been unavailing. The length of services to which a parent of a child under three is entitled is a matter of discretion. (*In re Aryanna C.* (2005) 132 Cal.App.4th 1234.) We recently held that the same was true for a dependent minor over the age of three. (*In re Derrick S.* (2007) 156 Cal.App.4th 436, 439 (*Derrick S.*).) In *Derrick S.* we held that, regardless of a dependent's age, "[n]o statute or rule of court restricts a juvenile court's discretion to order less than the maximum amount of reunification services when confronted with a parent who is unwilling or unable to benefit from additional reunification services, or if for other reasons the likelihood of reunifying the family is faint." (*Ibid.*) There is simply "no absolute right to receive the maximum amount of statutorily fixed services in any and all circumstances." (*Id.* at p. 445.) Accordingly, just as "a juvenile court conducting a dependency for a child above the age of three retains the discretion to terminate the

7

provision of reunification services before expiration of the 12-month period," so too may it do so at the expiration of the six-month period.  (*Id.* at p. 449.)  We reject, therefore, Mother's suggestion that she is entitled to six months of services as a matter of right.

It is of no moment that here the court twice ordered the Bureau to give Mother reunification services—once at the outset of the matter and a second time after it found the Bureau had not provided adequate services.  The court's decision at the July 10 hearing to terminate reunification services at the four-month mark involves the same discretionary decision it made when it ordered them originally.  Given that Mother had not fulfilled any of the requirements of her case plan other than visiting her children, the juvenile court did not abuse its discretion in reducing Mother's services from six months to four and setting a section 366.26 hearing.

## IV.  DISPOSITION

The petition for extraordinary writ is denied on the merits.  The request for a stay is also denied.  Since the permanency planning hearing is presently set for November 4, 2013, our decision on the writ petition is final as to this court immediately.  (Cal. Rules of Court, rule 8.490(b)(3).)

_____
Haerle, Acting P.J.

We concur:


_____
Richman, J.


_____
Brick J.*



* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.